

*U.S. Department of Justice*

*United States Attorney
Eastern District of New York*

*271 Cadman Plaza East
Brooklyn, New York 11201*

TM:JMS/SD

January 26, 2017

By ECF

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

      Re:    *United States v. Paulino Granados*
              Criminal Docket No. 11-557 (KAM)

Dear Judge Matsumoto:

      On June 6, 2016, the defendant Paulino Ramirez-Granados pleaded guilty pursuant to a plea agreement to count three of a twenty-one count indictment, charging him with sex trafficking, in violation of 18 U.S.C. § 1591(a)(1), (a)(2) and (b)(1). The defendant is scheduled to be sentenced by Your Honor on February 10, 2017.

I.      Factual Background

      As the Pre-Sentencing Report ("PSR") describes in great detail, the defendant, along with his co-conspirators, participated in a sex trafficking conspiracy from October 1998 to December 2011. (PSR ¶¶ 4-91). For over a decade, the defendant was involved in the family business, which involved the defendant and his co-conspirators starting romantic relationships with females in Mexico and then luring them to the United States with the false promise of a better life. Each of these victims was transported by the defendant and his co-conspirators, with the intent that they would engage in prostitution. (PSR ¶¶ 4-5). Once in the United States, the defendants forced victims into prostitution by threats, coercion and violence. For each of the victims, the defendant and his co-conspirators kept all of the proceeds from the prostitution.

      As part of his plea agreement, the defendant pled guilty to sex trafficking Jane Doe #1. However, he was also responsible for the trafficking of Jane Doe #3, 9, and 10 and the recruitment of Jane Doe #9 and Jane Doe #10. (PSR ¶¶ 1, 87-89). The defendant's conduct towards each of these victims shows the same pattern of criminal conduct and abuse. For

example, in 2008, the defendant recruited Jane Doe #9 in Tenancingo, Mexico and, shortly after, he began a relationship with her and planned a future with her in the United States, promising a better standard of living and money to purchase a home for Jane Doe #9's family in Mexico. (PSR ¶ 57). He arranged for Jane Doe #9 to travel to the United States at which point the defendant and his sister began soliciting Jane Doe #9 to work as a prostitute. Jane Doe #9 stated that she did not want to work as a prostitute, at which point the defendant became verbally and physically abusive. (PSR ¶ 59). His sister also pressured Jane Doe #9, showed her what to do as a prostitute and provided her with contact information for drivers to jobs. As a result, Jane Doe #9 worked for the defendant in the United States from October 2008 until October 2011. (PSR ¶¶ 57-60). The defendant kept Jane Doe #9 working by assaulting her and threatening to harm her son if she did not obey the defendant. (PSR ¶ 60).

Also in 2008, the defendant recruited Jane Doe #10 in Tenancingo, Mexico. As he did with Jane Doe #9, the defendant dated Jane Doe #10 in Mexico. He eventually moved her into his parents' home, and impregnated her. (PSR ¶¶ 61-62). She gave birth to their child in January 2009, after which the defendant enticed Jane Doe #10 to move to the United States with a promise of a better life for her and their child. He said he would send Jane Doe #10 to the United States first and then he would join her. (PSR ¶¶ 62-63). Upon Jane Doe #10's arrival to the United States, the defendant told her he did not have the money to come to the United States; he explained that in order to pay off her smuggling debt, Jane Doe #10 must work as a prostitute. (PSR ¶ 64). The defendant's sister also instructed Jane Doe #10 on how to work as a prostitute. The defendant told Jane Doe #10 that if she did not make and send money to Mexico by prostituting, she would never see her child again. As a result of the threats, Jane Doe #10 worked for the defendant from approximately 2009 until 2011. (PSR ¶¶ 61-63).

The defendant's co-conspirator, Antonio Lira-Robles, used a similar tactic to recruit Jane Doe #1 in Tenancingo, by dating her. She became pregnant by Lira-Robles, and he forced her to abort the child. (PSR ¶ 8). Lira-Robles then forced Jane Doe #1, through threats and physical violence, to begin prostituting in Mexico City. (PSR ¶ 9). In June 2000, Lira-Robles and Jane Doe #1 travelled to Queens, New York. (PSR ¶ 11). Upon their arrival, Jane Doe #1 stated that she did not want to work as a prostitute, to which the Lira-Robles responded by physically assaulting her. As a result, Jane Doe #1 worked for Lira-Robles in the United States, including New York and Boston, from 2001 to 2003. (PSR ¶ 12). In 2003, Jane Doe #1 returned to Tenancingo to work. In 2008, Lira-Robles again threatened Jane Doe #1 and ordered her to come back to the United States to work as a prostitute. Id. The defendant, Ramirez-Granados, helped Lira-Robles smuggle Jane Doe #1 back into the United States. Because of their threats, Jane Doe #1 agreed to return to the Bronx, New York to work. Id. Jane Doe #1

continued to work for Lira-Robles from 2008 to 2010 and provided all the proceeds to him and to the defendant. (PSR ¶ 14).

On March 31, 2015, as part of an ongoing investigation into the Granados Sex Trafficking organization, the defendant was arrested in Mexico. (PSR ¶ 85).

II.     Objections to the Pre-Sentence Report

In the plea agreement, the defendant's United States Sentencing Guidelines ("Guidelines") range was estimated to be 235-293 months' imprisonment. See Plea agreement ¶ 2. The United States Probation Department, however, calculated that the applicable guidelines range is 292-365 months' imprisonment. (PSR ¶ 166). The disparity between the estimated Guidelines range in the plea agreement and the Guidelines calculation in the PSR is based, in part, on the fact that the PSR adds a three-level enhancement for the defendant's role in trafficking Jane Doe #1 based on the abortion she sustained, which constituted a degree of injury between life-threatening and serious pursuant to U.S.S.G. 2A3.1(b)(4)(C). Based on the facts of this case, the government cannot prove that an injury "between life-threatening and serious" within the meaning of the Sentencing Guidelines was foreseeable to the defendant himself, given that Lira-Robles forced Jane Doe #1 to have an abortion prior to the time the defendant assisted in trafficking Jane Doe #1.

Accordingly, the government maintains that the applicable advisory Guidelines range is 235 to 293 months. As the Court is aware, pursuant to the parties' plea agreement, the government has agreed not to take a position as to where within the Guidelines range the sentence should fall or advocate for a sentence above the applicable Guidelines range. See Plea agreement ¶ 4(b) and (c).

3

IV.     Conclusion

In sum, the defendant's role in a cruel family business of recruiting young women to force them into prostitution is significant.  The government respectfully requests that the Court consider the defendant's criminal conduct involving his victims in fashioning an appropriate sentence that will reflect the seriousness of the offense and deter criminal conduct.  See 18 U.S.C. § 3553(a).

                          Respectfully submitted,

                          ROBERT L. CAPERS
                          United States Attorney

By:     /s/ Jennifer M. Sasso
        Jennifer M. Sasso
        Assistant U.S. Attorney
        (718) 254-6402

CC: Clerk of the Court (KAM) (By ECF)
    Raymond Colon, Esq.  (By ECF)

4